SCHAFF, Respondent, vs. HIPKE and another, Appellants.

*April 7—May 3, 1955.*

For the appellants there was brief by *Puhr, Peters, Holden & Schlosser* of Sheboygan, attorneys, and *A. W. Mulhern* of New Holstein of counsel, and oral argument by *John R. Holden.*

For the respondent there was a brief by *Donald E. Bonk* of Chilton, and *Bassuener, Humke, Poole & Axel* of Sheboygan, and oral argument by *H. S. Humke.*

BROADFOOT, J.   Upon this appeal the defendants contend that there is no credible evidence from which the jury could draw any inference of negligence on the part of the defendant Hipke, either as to lookout or as to his control and management of his automobile, and that the plaintiff's negligence was equal to or greater than that of the defendant Hipke as a matter of law.

The accident happened to the east of the intersection of Wisconsin avenue with Washington street, a north-south street. On the north side of Wisconsin avenue east of Washington street there is a hardware store and warehouse. East of the warehouse is an alley or driveway slightly more than 20 feet in width. A lunchstand occupies the east 10 feet of the alley or driveway and extends northerly therein a distance of about eight feet. This lunchstand was not open the night of the accident and had not been open since the fall of 1952. Lunches, however, were served in the tavern immediately to the east. There is a break in the curb south of the driveway to permit vehicles to cross the sidewalk and enter therein. This opening is about 17½ feet long at the curb line but narrows to less than 15 feet at the sidewalk level. East of the alley and lunchstand is a tavern and a bookstore. Farther east is a theater with a canopy or marquee extending over the sidewalk. Wisconsin avenue is marked for the parallel parking of automobiles. There were two parking spaces south of the tavern and bookstore and two west of the alley and south of the hardware store and warehouse.

The testimony with respect to where the accident happened is in direct conflict. Hipke testified at the trial as to his activities and movements prior to the accident as follows: He had attended a basketball tournament at the high school in New Holstein. The high school is located in a north-westerly direction from the intersection described above. After the last game at the high school had been concluded he got in his car, drove south to Wisconsin avenue and then drove to a restaurant located approximately five blocks east of Washington street to get a lunch. Finding the restaurant closed, he circled a block to his left and returned to Wisconsin avenue and proceeded west for the purpose of going to his home. The home of his parents, with whom he lived, was approximately two blocks north and two blocks east of the intersection of Washington street and Wisconsin

avenue. His purpose in driving to Washington street was to enable him to approach the driveway to his home from the west. He testified that this was preferable because the driveway was icy, there was a raise in the sidewalk at the east of the driveway, and because of a grade. The streets and sidewalk were dry. He drove west on Wisconsin avenue at a speed of 20 miles an hour. There were cars parked in each of the parking spaces south of the tavern and bookstore. As he approached the two cars the plaintiff stepped out into the street between them. The plaintiff was looking straight ahead, walking hurriedly, and took two or three steps when he was struck by the right fender and hood of the Hipke car. Hipke saw the plaintiff as soon as he stepped from between the parked cars. Hipke was then 10 feet away. He immediately applied his brakes and came to a stop with the front of his car just east of the front of the car parked south of the tavern, which was the westerly of the two parked cars. After the accident he noticed two skid marks five feet in length starting near the division line of the two parking spaces in front of the tavern and bookstore. He testified that the plaintiff flew through the air and then skidded to where he came to rest with his head seven and a half feet south of the north curb near the southeast corner of the parking space just west of the alley. Plaintiff's feet extended in an easterly direction. The speed of his car when he struck the plaintiff was approximately 10 miles an hour. After he stopped his car he got out and looked at the injured man and then, because he was blocking traffic upon the street, drove his car into the entrance to the alley and stopped it with the right front wheel about at the curb line.

At the trial the plaintiff testified that he arrived in New Holstein a short time before the accident. He was driving east on Wisconsin avenue and parked his car on the south side thereof and to the west of the tavern building. He went to the tavern to inquire as to the results of the games played

in the basketball tournament. He drank a bottle of beer while in the tavern and was there perhaps ten minutes. As he came out of the tavern he proceeded in a westerly direction until he was opposite the alleyway. He remembers taking one or two steps from the curb line and then he remembered nothing until he woke up in the hospital.

A police officer gave the following testimony at the trial: That he got to the scene of the accident from two to five minutes after the same had happened. He noted that Hipke's car was parked diagonally with the right front wheel at the curb line just south of the alley. He marked the location of the plaintiff, then helped to remove him to a doctor's office a short distance to the east of the place of the accident. Thereafter he returned to the scene of the accident, made measurements, and prepared notes for his official report. He talked to Hipke, who said he was going home but on his way home he was going to stop to have a lunch, and that he had turned in there to have something to eat. On cross-examination he did not remember whether Hipke had said "turned in" or "stopped there." He testified to the skid marks five feet in length, about three feet south of the car parked in front of the tavern. He testified that from the west end of the skid marks there were tracks of the car turning into the driveway to the alley leading to the point where the Hipke car was parked. He stated that those tracks were not skid marks but looked as though Hipke had the brakes partly on.

Hipke and others testified that the police officer did not arrive until 10 or 15 minutes after the accident. Hipke also denied the conversation with the police officer. He testified that the only question the officer asked him that night was "Whose car struck the plaintiff?" More than three months prior to the trial Hipke was examined adversely before a court commissioner and portions of his deposition then taken were introduced in evidence at the trial. In his adverse examination he stated that the police officer got to the scene

about two minutes after the accident. He had also stated that he told the police officer how the accident happened. He had also said that after the accident he backed his car to the east and parked it in front of the theater. He had also stated that he stopped his car about five feet after he struck the plaintiff and left his car there until the officer came.

Large maps drawn to scale were introduced in evidence. These exhibits showed the intersection of Washington street and Wisconsin avenue and the buildings located on the north side of Wisconsin avenue east of the intersection as far as the theater. They also showed the parking spaces in that area. From those exhibits the jury could have determined that if the plaintiff was struck where Hipke claimed, *i. e.,* in the street south of the east line of the parking space located south of the tavern, the plaintiff must have been thrown through the air and skidded on the pavement a distance of almost 40 feet. The only testimony in the record as to speed is that Hipke was going 10 miles an hour when he struck the plaintiff. The jury could tell from the map that if the plaintiff left the tavern and approached the street between the two parked cars he had to travel some distance to the east, when his car was parked westerly from the tavern. From the evidence before it, the jury could have inferred that Hipke intended to turn into the alley or to park at the entrance to the alley for the purpose of getting a lunch, and that the plaintiff was struck while one or two steps off the walk and before he entered the street south of the parking area.

Upon motions after verdict, the trial court stated that there were inferences that could be drawn by the jury that would support its findings. No authorities are required for the rule that where the evidence is in conflict but there is any credible evidence which, under any reasonable view, will support or admit of an inference either for or against the contention of any party, then the proper inference to be drawn therefrom is for the jury. Thus there was credible

evidence to support the jury's verdict that Hipke was causally negligent as to lookout and as to control and management.

The apportionment of negligence also was for the jury, and we cannot say as a matter of law that plaintiff's negligence was equal to or greater than that of the defendant Hipke.

*By the Court.*—Judgment affirmed.